**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Smith, | No. CV-23-00815-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Nathan Pile, et al., | |
| Defendants. | |

Pending before the Court are Defendants Curve Development, LLC ("Curve"), Nathan Pile ("Mr. Pile"), and Misty Pile (Mrs. Pile) (collectively, the "Curve Defendants") Motion to Dismiss (Doc. 10) and Defendant JEN Partners, LLC's ("JEN Partners") Motion to Dismiss (Doc. 11). Plaintiff, Deborah Smith ("Smith") filed responses (Doc. 19; Doc. 20). Defendants Curve, Mr. Pile and Mrs. Pile filed a reply (Doc. 24) and Defendant JEN Partners, filed a reply (Doc. 23). The Court has considered the pleadings and relevant case law and will grant the motions in part and deny the motions in part.

**I.   BACKGROUND**

These Motions stem from a dispute from Smith's employment with Curve, Curve's relationship with JEN Partners, and dispute over a condo purchase. (Doc. 10 at 2–4.) Curve is a housing developer for single family rental properties in Arizona and other states. (Doc. 1-3 at 17 ¶ 8.) JEN Partners is a New York-based private equity firm who funds Curve. (*Id.* at 18 ¶¶ 9–10.) In July 2020, Curve hired Smith, a Certified Public Accountant ("CPA") to be its Chief Financial Officer ("CFO"), where she would report directly to

Curve's President, Mr. Pile. (*Id*. at 17 ¶ 4; 18 ¶ 27; 21 ¶ 48.) As part of the hiring process, she interviewed with the Managing Director for JEN Partners, Allen Anderson. (*Id*. ¶ 28.) Smith alleges that JEN Partners maintained "material input and influence regarding hiring decisions" of Curve employees. (*Id*. ¶ 21.) While employed at Curve, Smith worked on several JEN Partners projects and tasks. (*Id*. ¶ 34.) As part of her compensation, she was eligible to receive a profit share from Curve's rental portfolio. (*Id*. at 19 ¶ 35.) Plaintiff's profit share for each development project vested over three years, with one-third vesting each year. (*Id*. ¶ 36.) As part of her written employment contract (the "Curve Employment Agreement") Smith would forfeit unpaid profit sharing upon leaving the company or termination. (*Id*. at 20 ¶ 37.)

Smith alleges that over the course of her employment, Curve became "increasingly hostile" because of JEN Partners' and Mr. Pile's conduct. (*Id*. at 21 ¶ 47.) She further alleges that in January 2022, Mr. Pile and Mr. Anderson "made improper demands" on her to ignore certain CPA duties, including adherence to generally acceptable accounting principles ("GAAP") which could result in the loss of her CPA license. (*Id*. ¶¶ 50, 54.) In response she would not provide Mr. Allen access to Curve's QuickBooks' records. (*Id*. ¶ 53.) Smith alleges that after this refusal, Mr. Allen instructed Mr. Pile to terminate her, but instead Mr. Pile "began creating an environment that would result" in her termination. (*Id*. at 22 ¶¶ 55–56.) Smith alleges this in part entailed Mr. Pile making demands she go against her CPA duties, and when she would not comply he began undermining her with other employees. (*Id*. at 22 ¶¶57–60.) Consequently, Smith resigned from Curve in June 2022. (*Id*. at 23 ¶ 67.) Smith alleges that she and Mr. Pile entered into a verbal, enforceable agreement with different severance terms than the original Curve Employment Agreement (the "verbal Curve Agreement") that, among other things, she would be paid to the end of the year after two property closings without Smith needing to continue her work, and that she would receive profit sharing payout at five percent instead of the original three percent. (*Id*. at 18 ¶ 23–25.) She also notes she agreed to stay on board to transition Ruger Fontes. (*Id*. at 25 ¶ 88.)

Smith also alleges that she and Mr. Pile also entered into an April 2021 verbal agreement (the "Condo Agreement") whereby she would obtain one-hundred percent ownership interest in Mr. Pile's condo (the "Condo") at issue here. (*Id.* ¶ 39.) Smith agreed to purchase his Condo for $160,000 and made the $40,000 downpayment. (*Id.* ¶¶ 40–42.) Smith alleges that in turn, Mr. Pile transferred one third interest in the Condo to Smith's husband. (*Id.* ¶ 57.)

Based on these events, Smith filed suit against Defendants in Maricopa County Superior Court, which Defendants removed to this Court. (Doc. 1.) Smith alleges Mr. Pile and Curve breached both the verbal Condo Agreement and the verbal Curve Agreement as well as the implied covenant of Good Faith and Fair Dealing by refusing to pay Smith the amounts she was owed and failing to transfer her the remaining two-thirds interest in the Condo. (Doc. 1-3 at 25–26.) Smith also alleges Curve and JEN Partners constructively discharged her, resulting in a wrongful termination. (*Id.* at 26.) She also brings a claim for specific performance as it relates to the Condo. (*Id.* at 27.) Finally, Smith alleges that JEN Partners and Curve violated the Consolidated Omnibus Budget Reconciliation Act in failing to provider her notice she could continue her insurance coverage after she was constructively discharged. (*Id.* at 30–31.) Defendants JEN Partners, and Curve as itself and on behalf of Mr. and Mrs. Pile have moved to dismiss all Counts, which the Court will address below.

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This requirement is met if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Id.* Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557.) Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials— documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

**III. DISCUSSION**

    **A. Count I and Count IV**

Count I alleges a breach of contract based on the April 2021 and June 2022 agreements regarding profit sharing and the Condo reached between Pile and Smith. The Curve Defendants argue that the June 2022 contract's alleged promise to increase Smith's profit share to five percent is unenforceable because there was no consideration. As for

the Condo agreements, the Curve Defendants argue that they are not valid because they violate Arizona's statute of frauds ("SOF"). Ariz. Rev. Stat. § 44-101(6). Count IV is a claim for specific performance as it relates to the alleged oral agreement to transfer the remaining interest in the Condo to Smith.

### *i.   Condo*

Arizona's SOF requires that agreements for the sale of real property or an interest in real property must be in writing and signed by the parties. *See id.* Neither party alleges that there is a formal written contract signed by the parties. Instead, the "contract" at issue is an email exchange. In an email exchange between the parties, they allegedly agreed to a monthly payment and a balloon payment for the Condo. Additionally, the alleged June 2022 modification—to just sign over the Condo to Smith and Mr. Pile would pay off the mortgage—was not in writing. *Best v. Edwards*, 176 P.3d 695, 699–700 (Ariz. App. 2008) (holding that when an original agreement falls within the statute of frauds, any material modification of the original agreement is also subject to the statute of frauds); *CFT Devs., LLC v. Le*, No. 1 CA-CV 13-0574, 2015 WL 71579, at *2 (Ariz. Ct. App. Jan. 6, 2015) ("As a result, the alleged oral agreements, as material modifications of the underlying leases, must comply with the statute of frauds.").

Smith argues that the Condo Agreement is exempt from the SOF under the doctrine of promissory estoppel or, alternatively, the constructive trust doctrine entitles her to relief. "The principle that a party may be estopped to assert the Statute of Frauds as a defense is well established in Arizona." *Del Rio Land, Inc. v. Haumont*, 574 P.2d 469, 474 (Ariz. Ct. App. 1977). For promissory estoppel to apply "the plaintiff must show substantial additional detriment separate and apart from the failure to receive the benefits he would have received under the oral agreement." *Id.* Here, Smith argues that by putting $40,000 down and making several monthly payments in reliance on the agreement she has successfully pled substantial detriment.[1]

The Curve Defendants argue that Smith does not plead estoppel but rather breach

---

[1] In the response, Smith also alleges that she made repairs to the Condo but that assertion is not in the FAC and therefore the Court will not consider it in ruling on these motion.

- 5 -

of contract. Smith alleges that there was a "valid and enforceable agreement" in or around June 2022. (Doc. 1-3 at 28.) Additionally, the Curve Defendants argue that Smith has not alleged facts to support detrimental reliance. The Court agrees that Smith has not pled facts supporting detrimental reliance. First, Smith's $40,000 payment did come with some benefit in her husband getting title to one-third of the Condo and is not part of the alleged breach. Smith's claim seems to be based on the allegation that Mr. Pile agreed to transfer one hundred percent of the Condo to Smith while he would still pay the mortgage. Smith has not alleged that she took any actions in reliance on that agreement. In fact, she continued to make monthly payments on the Condo as if though the Condo Agreement didn't exist. Accordingly, Court finds that Smith has not successfully pled detrimental reliance.

"In Arizona, the doctrine of promissory estoppel applies to a contract otherwise barred by the Statute of Frauds only where a promise has been made not to rely on the Statute, that is, where the party asserting the Statute of Frauds defense has misrepresented that the statute's requirements have been met or promises to put the agreement in writing." *Mullins v. S. Pac. Transp. Co.*, 851 P.2d 839, 841 (Ariz. Ct. App. 1992) (internal quotations omitted). Here, Smith has not alleged that any of the Curve Defendants made such a promise.

Alternatively, Smith argues that her First Amended Complaint ("FAC") supports the imposition of a constructive trust to remove the agreement from the SOF. "[T]he statute of frauds does not bar constructive trusts, even in real property interests." *Turley v. Ethington*, 146 P.3d 1282, 1285 (Ariz. Ct. App. 2006). "A court may impose a constructive trust whenever title to property has been obtained through actual fraud, misrepresentation, concealment, undue influence, duress or through any other means which render it unconscionable for the holder of legal title to continue to retain and enjoy its beneficial interest." *Id.* (cleaned up). In response, the Curve Defendants argue that a constructive trust is a remedial device to be used only once liability is found. *See In re Handy*, 624 F.3d 19, 22 (1st Cir. 2010). The court in *Handy* stated that "[c]onstructive trusts are not

1 substantive rights that confer a cause of action." *Id.* However, where a plaintiff has made a claim that *could* give rise to a remedy of a constructive trust, that claim should not be dismissed. *See Turley*, 146 P.3d at 644 ("Based on the facts alleged in the complaint, the Turleys have stated a cause of action under which the doctrine of constructive trusts might apply.") Here, the FAC includes enough facts that could plausibly support the imposition of a constructive trust.

Next, Arizona does recognize an exception to the SOF based on part performance. *See Basmajian v. Compass Bank*, No. CV-17-00696-PHX-BSB, 2017 WL 6415358, at *4 (D. Ariz. Aug. 28, 2017). This exception is only available to a party seeking equitable relief. *Id.* at *5. Similarly, the constructive trust doctrine is an equitable doctrine that applies only to a request for equitable relief. Here, Smith seeks monetary damages under Count I but specific performance under Count IV. Therefore, to the extent Smith seeks relief based on the constructive trust doctrine, it would only apply to Count IV. Therefore, the Court will dismiss Count I because it relates to monetary claims stemming from the Condo, but not dismiss Count IV, her claim for specific performance under the verbal Condo Agreement.

### ii.     Profit Share

The Curve Defendants argue that the alleged promise to increase Plaintiff's profit share to five percent fails because it lacks consideration. Smith claims that she provided consideration agreeing to and remaining employed at Curve to assist in transitioning Ruger Fontes.

"For an enforceable contract to exist, there must be an offer, an acceptance, consideration, and sufficient specification of terms so that obligations involved can be ascertained." *K-Line Builders, Inc. v. First Fed. Sav. & Loan Ass'n*, 677 P.2d 1317, 1320 (Ariz. Ct. App. 1983) (citing *Savoca Masonry Co., Inc. v. Homes & Son Constr. Co., Inc.*, 542 P.2d 817 (Ariz. 1975)). "Valid consideration consists of either a benefit to the promisor or detriment to the promisee." *USLife Title Co. of Arizona v. Gutkin*, 732 P.2d 579, 584 (Ariz. Ct. App. 1986). Past benefits do not constitute sufficient consideration.

*WNJ24K, LLC v. Civic Fin. Services*, No. CV-21-00322-PHX-SPL, 2021 WL 1313630, at *3 (D. Ariz. Mar. 25, 2021) (quoting *Matter of Mariotte's Est.*, 619 P.2d 1068, 1069 (Ariz. Ct. App. 1980)).  The Curve Defendants argue that the language of the FAC is clear that the June 2022 discussions reflect an intent to compensate Smith for *past* work, therefore there is no consideration given and there is no contract to enforce.  However, reading the allegations in the FAC as true and construing them in the light most favorable to Smith, the FAC says that she continued to work through the transition in exchange for the increased percentage of profit share.  This is a plausible allegation that Smith gave consideration.  Therefore, this claim will not be dismissed.

### B. Count II

"Arizona 'law implies a covenant of good faith and fair dealing in every contract.'" *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)).  "[I]mplied terms are as much of a contract as are the express terms."  *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Tr. Fund*, 38 P.3d 12, 28 (Ariz. 2002).  "The purpose of such terms is so 'neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.'"  *Bike Fashion Corp.*, 46 P.3d at 434 (quoting *Rawlings*, 726 P.2d at 569–70).  "Arizona law recognizes that a party can breach the implied covenant of good faith and fair dealing both by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain."  *Id.* at 435.  Here, the Curve Defendants' only argument is that there is no valid and enforceable agreement and that therefore this claim fails.  However, because the Court is not dismissing Smith's claim regarding the potential profit share agreement, it will also not dismiss this claim.

### C. Count III

JEN Partners moves to dismiss Count III, the constructive discharge claim, because JEN Partners was not Smith's employer and because Smith failed to state a claim.  *See* Fed.

R. Civ. P. 12.

The FAC states that Smith accepted a written employment offer from Curve to become its CFO. The written employment contract says that Smith's position is with Curve Development LLC and is signed by Smith and Mr. Pile on behalf of Curve. (Doc. 19-1.) Smith argues that she should be allowed to sue JEN Partners for constructive discharge because Curve and JEN Partners are affiliates, JEN Partners exercises some control over curve's hiring and firing decisions, and some of her job responsibilities involve JEN Partners. Although Smith does not specifically allege it, her argument seems to be that JEN Partners is the alter ego of Curve, and therefore she should be allowed to pierce the corporate veil to go after JEN Partners. Neither side addressed this issue in the pleadings, but Smith argues the Court should not dismiss the claim so she is able to discover the true relationship between these two entities. On the face of the pleadings and FAC, the Court finds that there are sufficient facts whereby Smith could plausibly pierce the corporate veil. Therefore, the Court will not, at this time, dismiss JEN Partners on the basis that they are not her employer.

Constructive discharge is not an independent cause of action. *Peterson v. City of Surprise*, 418 P.3d 1020, 1023 (Ariz. Ct. App. 2018). "To prevail on a claim for constructive discharge, an employee also must prove a common-law or statutory claim for wrongful termination." *Id.* Ariz. Rev. Stat. § 23-1501 defines the circumstances under which an employee has a claim for wrongful discharge. "The statute permits wrongful termination claims when (1) a discharge is in violation of an employment contract; (2) a discharge violates an Arizona statute; or (3) a discharge is in retaliation for the employee's assertion of certain rights protected by state law." *Guernsey v. Elko Wire Rope Inc.*, No. CV-21-00848-PHX-DJH, 2023 WL 5348567, at *2 (D. Ariz. Aug. 21, 2023).

The Curve Defendants argue that the constructive discharge claim fails because it is not a standalone action and Smith did not plead the predicate discrimination claim. The Curve Defendants rely on *Federico v. Louis DeJoy*, No. CV-22-00706-PHX-DJH, 2023 WL 3388848 (D. Ariz. May 11, 2023) in making this argument. While the *Federico* court

1  stated that "[p]laintiff cannot prevail on a constructive discharge claim without successfully
2  pleading a discrimination claim" this statement was case specific.  The plaintiff in *Federico*
3  based their wrongful termination claim on Ariz. Rev. Stat. § 23-1502.  Smith brings hers
4  under Ariz. Rev. Stat. § 23-1501 which provides other grounds for wrongful termination.
5  JEN Partners argues that the Court should dismiss Count III because Smith makes no
6  allegations that she was directed to commit acts which would have violated the Arizona
7  Constitution or any Arizona Statute.  *See* Ariz. Rev. Stat. § 23-1502.

In her response, Smith mostly focuses on the constructive discharge portion to show that her resignation was really a discharge for purposes of pleading a wrongful termination claim.  However, Smith must also allege one of the three circumstances required by statute. *Id.*  In her response, she argues the discharge was in retaliation for refusing to engage in "these unlawful acts." (Doc. 19 at 12.)  The only potential "unlawful act" she cites is the employer directing her to violate GAAP in preparation of performing her accounting materials.  Ariz. Rev. Stat. § 23-1501(A)(3)(c)(i) allows a wrongful termination claim if the discharge was in retaliation for "[t]he refusal by the employee to commit an act or omission that would violate the Constitution of Arizona or the statues of this state." Plaintiff has not explained how an employer asking her do something she believes violates GAAP equates to asking her to do something that violates Arizona law.  Therefore, the Court will dismiss, without prejudice, Count III because Smith has not adequately pled a claim for wrongful termination.

**D. Count V**

JEN Partners moves to dismiss Count V, violation of Consolidated Omnibus Budget Reconciliation Act ("COBRA"), because it is not the "plan sponsor" of the group health plan so it had no duty to provide notice.  The Curve Defendants move to dismiss Count V because Plaintiff has failed to allege that Curve has twenty employees or that Curve and JEN Partners, together, are a single employer under 26 U.S.C. § 414(t).

"Under the Consolidated Omnibus Budget Reconciliation Act of 1985, ERISA plan sponsors are required to provide terminated employees and their dependents with the

option of purchasing the continuation of their health coverage without regard to insurability." *DeVoll v. Burdick Painting, Inc.*, 35 F.3d 408, 412–13 (9th Cir. 1994). "Subsection (a) shall not apply to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C. § 1161(b).

In the FAC, Smith makes numerous factual allegations about the relationship between JEN Partners and Curve as discussed above. There are no allegations about how many employees Curve or JEN Partners has, and Smith's response does not address this point. The Court has no way to know if Curve has two employees, or even ten or twenty. If Curve only has three employees and JEN Partners has three, then, even if combined, they are not required to comply with 29 U.S.C. § 1161(a). Accordingly, the Court will dismiss Count V without prejudice.

## IV. LEAVE TO AMEND

Federal Rule of Civil Procedure 15(a) requires that leave to amend be "freely give[n] when justice so requires." Leave to amend should not be denied unless "the proposed amendment either lacks merit or would not serve any purpose because to grant it would be futile in saving the plaintiff's suit." *Universal Mortg. Co. v. Prudential Ins. Co.*, 799 F.2d 458, 459 (9th Cir. 1986). Therefore, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (cleaned up).

The Court will grant Plaintiff leave to amend Count I's claim for contractual claims related to the Condo. The Court will also grant leave to amend Counts III and V. These Counts may be cured by the allegation of other facts. Additionally, given the early stage of this litigation, allowing amendment will likely help clarify the claims.

## V. CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED** granting in part and denying in part Curve

Defendants' Motion to Dismiss (Doc. 10) and JEN Partners Motion to Dismiss (Doc. 11). For Count I, the motions are granted as to the contractual claims related to the Condo, but denied as it relates to the claim for increased profit share. Counts III and V are dismissed without prejudice. The motions are denied as regarding Count II and IV.

**IT IS FURTHER ORDERED** granting Plaintiff leave to amend Count I, Count III and Count V. If Plaintiff intends to file a second amended complaint, it must be filed no later than twenty (20) days after the date of this Order.

Dated this 20th day of February, 2024.

Honorable Susan M. Brnovich
United States District Judge