**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Deborah Smith, | No. CV-23-00815-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Nathan Pile, Misty Pile, Curve Development LLC, and JEN Partners LLC, | |
| Defendants. | |

This case concerns a soured employment relationship. Plaintiff Deborah Smith previously worked as the Chief Financial Officer of Arizona-based housing developer Curve Development, LLC ("Curve"). After Smith's manager, Nathan Pile ("Pile"), allegedly improperly asked her to violate her duties as a certified public accountant, Smith decided to resign. Later, Smith filed a complaint in state court against Curve, JEN Partners ("JEN") (a New York-based private equity firm Curve worked with closely), Pile, and Pile's wife Misty Pile, asserting a variety of claims connected to her former employment. The complaint was removed to federal court based on Smith alleging a federal claim involving her health insurance. The complaint was dismissed, Smith amended it, and defendants again moved to dismiss. Smith has not pleaded sufficient facts supporting her sole federal claim. Instead of addressing the viability of the remaining claims, the parties must file statements explaining whether the court should remand this case to state court.

**I.  Background**

In 2019, Pile formed Curve, an Arizona limited liability company that "develops

single-family rental projects in Arizona and other states." (Doc. 27 at 2.) JEN is a Delaware limited liability company Smith describes as a "private equity firm whose primary investment platform is real estate." (Doc. 27 at 2.) As of 2019, Pile "had been working with JEN Partners for multiple years" and created Curve with JEN's single-family home rental portfolio in mind. JEN "holds Pile out to the public as a member of its 'team.'" (Doc. 27 at 2.) While ostensibly separate companies, JEN "has overriding and/or final authority over [hiring and firing] decisions concerning employees of Curve." (Doc. 27 at 3.)

In July 2020, Curve hired Smith, a Certified Public Accountant, to be its CFO, where she would report directly to Pile. (Doc. 27 at 3, 13.) As part of the hiring process, Smith interviewed with Allen Anderson, the Managing Director of JEN. (Doc. 27 at 3.) The terms of Smith's compensation are not relevant for this order, nor are the details regarding her departure from Curve. But approximately two years after she started working for Curve, Smith notified Pile "she could no longer remain employed at Curve due to the toxic working conditions and environment." (Doc. 27 at 9.) Smith resigned but did not receive the compensation she thought she was due. She also did not receive any notice that she could continue the health insurance she had through Curve.

Smith filed an initial and amended complaint in state court alleging, among other claims, a "violation of the Consolidated Omnibus Budget Reconciliation [Act] (COBRA)" based on not receiving notice she could continue her health insurance. (Doc. 1-3 at 12, 29.) Defendants removed the case to federal court based exclusively on the COBRA claim. It is undisputed there is not complete diversity between the parties. (Doc. 1 at 2.)

JEN filed a motion to dismiss the amended complaint as did Curve, Pile, and his wife. (Docs. 10, 11.) This court dismissed some of the claims, including Smith's COBRA claim. In explaining that dismissal, the court reasoned COBRA only applies to employers with 20 or more employees. (Doc. 26 at 11.) The amended complaint did not plead facts establishing COBRA might apply because the amended complaint contained "no allegations about how many employees Curve or JEN" had during the relevant time and "Smith's response [did] not address this point." (Doc. 26 at 11.) Smith was granted leave

to amend the COBRA claim.

Smith filed a second amended complaint alleging the number of employees Curve and JEN had at the relevant time. (Doc. 27 at 16.) According to Smith, Curve had 20 or more employees for only one quarter in 2021 and did not have more than 20 employees during the first half of 2022. (Doc. 27 at 16.) But if the number of employees for Curve and JEN were combined, the result would be more than 20 employees. (Doc. 27 at 16.) The two groups of defendants filed separate motions to dismiss. (Doc. 28, 29.) The only relevant portions of those motions are those addressed to the COBRA claim.

JEN's motion argues it is not a proper defendant for Smith's COBRA claim because there are no allegations JEN "was the 'plan sponsor' or that [JEN] was involved in the employee benefit plan in any way." (Doc. 28 at 8.) Curve and the Piles devote four-and-a-half pages of their motion to the viability of the COBRA claim. (Doc. 29 at 13–15.) In brief, Curve and the Piles argue there are no allegations that would allow Curve and JEN's employees to be aggregated to meet the 20-employee minimum. Curve and the Piles analyzed COBRA's statutory scheme in significant detail to describe when the employees of different entities can be aggregated to meet the minimum number for COBRA to apply.

Smith's oppositions to the motions argue she amended her complaint to include allegations that Curve and JEN, when combined, had more than 20 employees. Given that Curve and JEN work closely together, Smith argues the current complaint satisfies "the 20-employee threshold as permitted under the IRS code and COBRA." (Doc. 31 at 12.) Smith offers no meaningful arguments *why* the relationship between Curve and JEN allows their employee numbers to be aggregated, nor any meaningful response to either defendant's statutory analysis.

**II.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted)). This is not a "probability requirement," but a requirement that

the factual allegations show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[D]etermining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64.

### III.   COBRA Claim

The sole basis for federal jurisdiction is the presence of Smith's COBRA claim. "Generally, COBRA entitles an employee with employer-provided health insurance to elect continued coverage for a defined period of time after the end of employment." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1283 (9th Cir. 2017). But COBRA does not apply to certain small businesses, that is "to any group health plan for any calendar year if all employers maintaining such plan normally employed fewer than 20 employees on a typical business day during the preceding calendar year." 29 U.S.C. § 1161(b).

Smith implies she received employer-provided health insurance from Curve (Doc. 27 at 4), and alleges that after leaving her employment, she did not receive a COBRA notice she claims was mandatory. (Doc. 27 at 16.) Curve argues it was not required to comply with COBRA because it did not have the requisite number of employees. JEN makes a similar argument that it had no obligations to Smith under COBRA because it was not her employer or involved in her health insurance in any way. Smith's complaint only alleges that the two businesses should be "treated as a single employer" because JEN exerted some control over Curve. (Doc. 27 at 15.)

Through a complicated incorporation of numerous statutory provisions, COBRA provides specific guidance on when potentially-separate entities should be viewed as a single "employer" for purposes of determining whether COBRA applies.[1] *See generally*

---

[1] The general definition of "employer" applicable to COBRA and the rest of ERISA "includes 'any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan,' [29 U.S.C.] § 1002(5)." *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 7 (2004). There are no allegations that JEN took any actions "in relation to" Smith's health insurance. *Cf. Bogue v. Ampex Corp.*, 976 F.2d 1319, 1323 (9th Cir. 1992) (discussing benefit plan "established

*Kidder v. H & B Marine Inc.*, 932 F.2d 347, 354 (5th Cir. 1991). The relevant section of COBRA, 29 U.S.C. § 1167(4), defines "employer" "by reference to the 'common-control' provision of Title 26 U.S.C. § 414(t)." *McGoldrick v. DataTrak Int'l, Inc.*, 42 F. Supp. 2d 893, 896 (D. Minn. 1999). And 26 U.S.C. § 414(t) in turn refers to the rules found in § 414(b) and § 414(m) as dictating when two entities should be viewed as a "single employer" for COBRA purposes.[2]

Beginning with subsection (b), the statute states "all employees of all corporations which are members of a controlled group of corporations (within the meaning of Section 1563(a) . . . ) shall be treated as employed by a single employer."[3] 26 U.S.C. § 414(b). As relevant here, 26 U.S.C. § 1563(a) describes a "parent-subsidiary controlled group" and a "brother-sister controlled group." The former applies when a parent corporation owns at least 80% of the stock of a subsidiary. 26 U.S.C. § 1563(a)(1). The latter applies when "5 or fewer persons who are individuals, estates, or trusts own" more than 50% of the stock in the two corporations. 26 U.S.C. § 1563(a)(2).

Subsection (m) addresses "employees of an affiliated service group." 26 U.S.C. § 414(m). That subsection recognizes various ways separate organizations might qualify as an "affiliated service group." In general, the two (or more) organizations must have common shareholders or partners, 26 U.S.C. § 414(m)(2)(A), or perform "on a regular and continuing basis" management functions for the other organization. 26 U.S.C. § 414(m)(5). *See, e.g.*, *Rogers v. I D Design, Inc.*, No. 1:06-CV-2101-CAP-WEJ, 2009 WL 10668634, at *12 (N.D. Ga. Mar. 6, 2009), *report and recommendation adopted*, No. 1:06-CV-2101-CAP, 2009 WL 10670932 (N.D. Ga. Apr. 17, 2009) (concluding there was not an affiliated service group because there was "no evidence in the record establishing that providing management functions to other organizations is the principal business of [the organizations

---

by a parent corporation for the employees of its wholly owned subsidiary").
[2] Section 414(t) identifies subsections (b), (c), and (m) as providing the rules for determining if there is a single employer. Curve argues "[s]ubsection (c) is clearly inapplicable here." (Doc. 29 at 15 n.17.) Smith does not argue otherwise, and the court accepts for present purposes that subsection (c) is irrelevant.
[3] Curve and JEN are limited liability companies but no party has argued the "common-control" provisions differ between corporations and LLCs.

- 5 -

at issue]").

The operative complaint does not allege that Curve or JEN owns at least 80% of the other. Nor does the complaint allege the same individuals own both Curve and JEN. Thus, neither the "parent-subsidiary controlled group" nor the "brother-sister controlled group" possibilities are supported by sufficient facts. The operative complaint also lacks facts that Curve and JEN had common partners or that one performs management functions for the other. Thus, Smith has not adequately alleged Curve and JEN qualify as a single employer as members of an affiliated service group. The only allegations that the two organizations should be treated as a single employer involve the amount of control JEN allegedly exerts over Curve's operations. But the Ninth Circuit and other courts have rejected application of a simple control test.

In the context of an alleged "parent-subsidiary" relationship, the Ninth Circuit observed "COBRA determines a parent corporation's liability, not by examining how much actual control the parent exercised over the subsidiary, but solely by reference to the parent's stock ownership of the subsidiary." *Gates v. Victor Fine Foods*, 54 F.3d 1457, 1464 (9th Cir. 1995). Other courts have reached similar conclusions, reasoning it is ownership and not control that matters. *See, e.g.*, *Williams v. UHV Techs., Inc.*, No. CIV.A. 03-1158 (FLW), 2005 WL 1459727, at *4 (D.N.J. June 20, 2005) ("Cases that have applied the controlled group definition in the context of COBRA coverage have addressed the issue strictly in terms of the stock ownership between multiple entities."). COBRA's definition of "employer" is limited to the situations outlined in the applicable statutes and Smith has not alleged the relationship between Curve and JEN qualifies such that the employees of the two entities can be aggregated. Smith has not stated a plausible COBRA claim.[4]

### IV.    Further Amendment and Supplemental Jurisdiction

In resolving a previous motion to dismiss, the court granted Smith leave to amend

---

[4] The court need not reach other issues with Smith's COBRA claim involving (1) the possibility she has not named the correct defendant, *see, e.g.*, *Lee v. ING Groep, N.V.*, 829 F.3d 1158, 1162 (9th Cir. 2016) (discussing appropriate defendants for certain ERISA claims), or (2) her failure to allege (a) her termination was a qualifying event, (b) she was a qualified beneficiary, or (c) either entity was a plan sponsor. (*See* Doc. 29 at 14.)

- 6 -

her COBRA claim. Smith added allegations regarding the number of employees but did not add any allegations establishing the two employers should be viewed as a single employer. There is no indication Smith would be able to allege facts meeting the applicable tests for aggregating Curve and JEN. She has offered no argument in response to Curve and JEN's claim that she cannot meet the statutory test, despite repeated opportunities. Therefore, the COBRA claim is dismissed without leave to amend.

Dismissing the sole basis for federal jurisdiction requires the court to address whether to exercise supplemental jurisdiction over the state-law claims. 28 U.S.C. § 1367(c)(3). The court must decide if "remanding the [remaining] state claims comports with the underlying objective of most sensibly accommodat[ing] the values of economy, convenience, fairness, and comity." *Exec. Software N. Am., Inc. v. U.S. Dist. Ct. for Cent. Dist. of California*, 24 F.3d 1545, 1557 (9th Cir. 1994), *overruled on other grounds by California Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008)). But "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

In the current case, the remaining disputes are state law claims primarily between Smith and Pile, both citizens of Arizona, involving events that occurred almost entirely in Arizona. The case has not progressed meaningfully in federal court and, at present, the factors of economy, convenience, fairness, and comity appear to favor remanding to state court. The parties must file statements providing their position on remanding the remaining claims.

Accordingly,

**IT IS ORDERED** the Motions to Dismiss (Docs. 28, 29) are **GRANTED IN PART**. The COBRA claim is **DISMISSED WITHOUT LEAVE TO AMEND**. The remainder of the motions are still pending, to be resolved if jurisdiction is retained.

/

/

**IT IS FURTHER ORDERED** within ten days of this order the parties shall file separate statements indicating whether the court should exercise supplemental jurisdiction over the remaining claims.

Dated this 7th day of January, 2025.

Honorable Krissa M. Lanham
United States District Judge